IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LEXXUS INTERNATIONAL, INC. and § | |
| NATURAL HEALTH TRENDS CORP., § | |
| § | |
| Plaintiffs/Counter-Defendants, § | |
| § | |
| v. § | |
| § | |
| JOHN LOGHRY, § | |
| § | Civil Action No. 3:04-CV-1039-L |
| Defendant, § | |
| § | |
| v. § | |
| § | |
| TERRY LACORE, MARK WOODBURN § | |
| and LISA GROSSMAN, Individually, § | |
| § | |
| Third-Party Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Counter-Defendants[] and Third-Party Defendants' Motion to Dismiss For Failure to State a Claim Upon Which Relief Can Be Granted and Motion for Judgment on the Pleadings and Third-Party Defendants' Motion to Dismiss the Claims Against Them, filed June 2, 2005.[1] After careful consideration of the motions, response, reply, appendices, record and applicable law, the court **grants in part and denies in part** Counter-Defendants[] and Third-Party Defendants' Motion to Dismiss For Failure to State a Claim Upon Which Relief Can Be Granted and Motion for

---

[1] Counter-Defendants and Third-Party Defendants inadvertently failed to file a formal motion pursuant to Fed. R. Civ. P. 7(b)(1). On November 10, 2005, the court ordered Counter-Defendants and Third-Party Defendants to file a motion. They complied with the court's order on November 15, 2005. Since the issues raised in the motion have been fully briefed by the parties and the filing of the motion is a formality to comply with Fed. R. Civ. P. 7(b)(1), the court **directs** the clerk to file-stamp the motion as of **June 2, 2005**. The court directs this action as a *nunc pro tunc* order.

**Memorandum Opinion and Order – Page 1**

Judgment on the Pleadings and Third-Party Defendants' Motion to Dismiss the Claims Against Them.[2]

## I.   Background

Lexxus International, Inc. ("Lexxus"), a subsidiary of Natural Health Trends Corp. ("Natural Health") (collectively, "Plaintiffs"), sells cosmetic and "quality of life" products through its multi-level marketing distribution network. Terry LaCore ("LaCore") and Mark Woodburn ("Woodburn") are principals of Lexxus. Lisa Grossman ("Grossman") is a Lexxus distributor. (LaCore, Woodburn and Grossman are collectively "Third-Party Defendants"). In December 2000, Lexxus entered into an agreement with John Loghry ("Loghry" or "Defendant") for Loghry to become a front-line distributor for Lexxus. Lexxus terminated Loghry's distributorship status on or around June 10, 2002.

Loghry filed a personal bankruptcy petition on September 18, 2002, with the United States Bankruptcy Court for the District of Nebraska. In those proceedings, Loghry did not disclose the existence of any potential claims against Plaintiffs or Third-Party Defendants. Loghry was granted an order of discharge of his debts on December 31, 2002.

Plaintiffs filed this action on May 13, 2004, against Loghry seeking a declaratory judgment that they were not obligated to issue stocks to Loghry and were legally justified in terminating their distributorship agreement with him. Plaintiffs also seek damages for breach of contract and product disparagement/trade slander.

---

[2]**As both parties include and rely on matters outside the pleadings regarding the motion to dismiss and motion for judgment on the pleadings, the court treats the motions as motions for summary judgment pursuant to Fed. R. Civ. P. 56.** *See* **Fed. R. Civ. P. 12(b), 12(c).**

**Memorandum Opinion and Order – Page 2**

On September 3, 2004, Loghry counterclaimed against Plaintiffs alleging breach of contract, fraudulent inducement, and statutory fraud. Loghry also claimed that Third-Party Defendants engaged in fraudulent inducement, statutory fraud, civil conspiracy and tortious interference with existing contractual relations. Loghry contends that in February 2001, LaCore and Woodburn, on behalf of Lexxus and Natural Health, agreed and represented to him that there would never be another front-line distributor in the Lexxus network and that all distributors who entered the network would be placed in Loghry's downline. Loghry also contends that Plaintiffs agreed to issue him one million shares of stock in Natural Health.

On November 1, 2004, Plaintiffs filed a motion for judgment on the pleadings, and Third-Party Defendants filed a motion to dismiss all the claims against them. By its order of February 2, 2005, the court granted in part and denied in part Plaintiffs' motion for judgment on the pleadings. The court denied Plaintiffs' and Third-Party Defendants' motion to dismiss as to Loghry's claims of common law fraud and civil conspiracy; granted the motion as to Loghry's claim of statutory fraud and tortious interference with contractual relations against Grossman; and dismissed those claims without prejudice for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The court also denied Loghry's alternative request for leave to amend his pleadings as to his statutory fraud and tortious interference claims; and denied as moot Loghry's alternative request for leave to amend his pleadings as to his common law fraud and civil conspiracy claims.

In its order of April 27, 2005, the court acknowledged an inconsistent statement in its February 2, 2005 order. The court therefore amended its February 2, 2005 order to clarify that Loghry's request for leave to amend his tortious interference claim against Grossman was denied.

The court also granted Loghry leave to amend his complaint as to his claims of fraud and civil conspiracy against Grossman. Loghry filed Defendant's Third Amended Answer, Counterclaim and Claims Against Additional Parties on May 18, 2005.

In their motions before the court, Plaintiffs and Third-Party Defendants assert that Loghry is judicially estopped from asserting his counterclaims because he failed to disclose any potential claims against them in his September 18, 2002 personal bankruptcy petition. They contend that such failure is not only an admission that no such claims exist, but also, as a matter of law, an automatic bar to future claims which arose before the bankruptcy and were not disclosed during the bankruptcy. Plaintiffs and Third-Party Defendants also maintain that they are entitled to judgment on the pleadings since Loghry contends that the actions which gave rise to the counterclaims were known to him and occurred before the bankruptcy. Loghry responds that his non-disclosure of his potential claims against Plaintiffs and Third-Party Defendants was inadvertent and that the application of judicial estoppel would be inequitable.[3]

The court now considers the motions. In resolving the motions, the court relies on the standards as set forth in the following section.

## II. Legal Standards

### A. Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[3] Loghry makes an equity argument but supports it with cases from circuits other than the Fifth Circuit. The Supreme Court case he cites, *New Hampshire v. Maine*, 532 U.S. 742 (2001), is not a bankruptcy case, and therefore is distinguishable from the case before the court. Thus the court is not persuaded by Loghry's contention that the application of judicial estoppel would be inequitable. Further, the Fifth Circuit's standard for making a judicial estoppel inquiry does not require the court to make equitable considerations. *See In re Superior Crewboats, Inc.* 374 F.3d 330, 335 (5th Cir. 2004).

**Memorandum Opinion and Order – Page 4**

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *Ragas,* 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see*

*also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

B. **Judicial Estoppel**

Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position. *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir.1988). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689 (1895). The doctrine's primary purpose is to protect the integrity of the judicial process, by preventing parties from "playing fast and loose with the courts to suit the exigencies of self interest." *Brandon*, 858 F.2d at 268 (internal quotation marks, parentheses and citations omitted).

Three limitations apply to the doctrine: (1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure *must have not been inadvertent*. *In re Superior Crewboats, Inc.* 374 F.3d 330, 335 (5th Cir. 2004) (emphasis added). In considering the third prong of judicial estoppel in bankruptcy cases, "the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only

**Memorandum Opinion and Order – Page 6**

when, in general, the debtor either lacks knowledge of the undisclosed claim or has no motive for their concealment." *In re Coastal Plains, Inc.,* 179 F.3d 197, 210 (5th Cir. 1999).

### C.  Disclosure of Claims in Bankruptcy

Pursuant to 11 U.S.C. § 521(a), a debtor is required to file a list of creditors, and, unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs. "Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *In re Coastal Plains, Inc.,* 179 F.3d at 208.

> The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action. The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed. Any claim with potential must be disclosed, even if it is contingent, dependant, or conditional.

*Id.* (internal citations and quotation marks omitted).

### III.  Analysis

Plaintiffs and Third-Party Defendants contend that Loghry intentionally failed to disclose the potential counterclaims against them in his September 18, 2002 personal bankruptcy petition, as required by the bankruptcy rules; and is therefore judicially estopped from asserting his counterclaims. Memorandum 3-10. They maintain that Loghry's failure to disclose was not inadvertent because in his pleadings he asserts that the actions which gave rise to the counterclaims occurred before the bankruptcy and, therefore, were known to him at the time. *Id*. at 4-8.

Loghry responds that his non-disclosure of the potential claims was not intentional because he did not know all the facts behind his counterclaims until after the bankruptcy had concluded.

**Memorandum Opinion and Order – Page 7**

Response at 6. More specifically, Loghry maintains that he received a telephone call from Mr. Thomas Crowley ("Crowley"), a former Lexxus distributor, in the summer of 2003, which first brought the possibility of fraud to light. Loghry asserts that Crowley advised him that Grossman and Lexxus fabricated a reason to have him terminated. Response at 6-7. Crowley's affidavit supports this assertion. *See* Loghry's Appendix at 6.

### A. <u>Loghry's Breach of Contract Claims</u>

Using the standard outlined in *In re Superior Crewboats, Inc.,* the court finds that Loghry is barred by the doctrine of judicial estoppel from asserting his breach of contract claims. Loghry contends that Lexxus and Natural Health breached a distributorship agreement and a stock agreement with him by, among other things, terminating his distributorship with Lexxus and failing to convey stocks to him as promised. *See* Defendant's Third Amended Answer, Counterclaim and Claims Against Additional Parties at 16-18. Loghry, however, admits in his affidavit that he was forced to file for bankruptcy protection as a result of his termination as a front-line distributor with Lexxus. *See* Loghry's Appendix at 3. Loghry thus had knowledge of these claims, and his position here is clearly inconsistent with his position in his bankruptcy proceedings. By omitting the claims from his bankruptcy schedules, Loghry represented that no such claims existed. This inconsistency readily satisfies the first prong of a judicial estoppel inquiry.

The second prong is also satisfied. There is no dispute that the bankruptcy court accepted Loghry's position of no potential litigation claims for breach of contract. Loghry did not disclose the claims in his bankruptcy schedules, and the court, relying on Loghry's bankruptcy petition and schedules, granted him a discharge.

The third prong is also satisfied with respect to these claims. Loghry's non-disclosure was not inadvertent because he had knowledge of the undisclosed claims for breach of contract. Specifically, Loghry states that he was forced to file bankruptcy when Lexxus terminated his distributorship. Loghry's breach of contract claims are based on the termination of the distributorship and Lexxus's failure to give him stock in Natural Health as promised. Loghry was fully aware of these potential claims when he filed for bankruptcy. Although there is no evidence that Loghry deliberately sought to conceal his breach of contract claims, Loghry will certainly reap a windfall if he recovers on these claims which were not disclosed to his creditors. *See In re Coastal Plains, Inc.,* 179 F.3d at 212. The court, therefore, determines that there is no genuine issue of material fact that Loghry's breach of contract claims are barred by judicial estoppel, and Plaintiffs and Third-Party Defendants are entitled to judgment as a matter of law.[4]

### B.    Loghry's Fraudulent Inducement and Civil Conspiracy Claims

Using the standard outlined in *In re Superior Crewboats, Inc.,* the court determines that, although Loghry's non-disclosure of his fraudulent inducement and conspiracy claims satisfies the first two prongs for judicial estoppel, it does not satisfy the third prong. Specifically, Loghry has presented evidence that he lacked knowledge of these undisclosed claims, as he only became aware of such potential claims in 2003, after he was granted an order of discharge in December 2002. At

---

[4]Plaintiff and Third-Party Defendants presented evidence that Loghry filed a motion to reopen his bankruptcy case on June 29, 2005, to include his claims against them. Plaintiffs and Third-Party Defendant's Reply Appendix at 5. The motion was granted. *Id.* The reopening of the bankruptcy case is of no moment, as the bankruptcy court stated that "[t]he issues with regard to judicial estoppel claims in both of the federal district court cases can still be appropriately resolved by the federal district courts with the real party in interest before the court." *Id.* Further, as the court noted in *In re Superior Crewboats, Inc.,* "'[a]llowing the debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them.'" 374 F.3d at 336 (quoting *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1288 (11th Cir. 2002)). "Judicial estoppel was designed to prevent such abuses." *Id.*

**Memorandum Opinion and Order – Page 9**

issue is whether Loghry had enough information prior to his bankruptcy proceeding to suggest that he may have possible causes of action for fraud and conspiracy against Plaintiffs and Third-Party Defendants that should have been disclosed. *See In re Coastal Plains, Inc.,* 179 F.3d at 208. As the court determines that there is a genuine issue of material fact regarding Loghry's knowledge of these potential claims and their non-disclosure, judicial estoppel cannot apply. Accordingly, Plaintiffs and Third-Party Defendants' motion for summary judgment as to Loghry's fraud and civil conspiracy claims should be denied.

## IV.     Miscellaneous

Plaintiffs and Third-Party Defendants contend that Loghry "purports to include claims in his Third Amended Answer that this Court previously dismissed without leave to replead." Memorandum at 13. Specifically, they contend that Loghry restates his tortious interference and statutory fraud claims in his third amended answer, and request that he be admonished by the court for reasserting these claims.

In its order of February 2, 2005, this court dismissed Loghry's claim of statutory fraud under Chapter 27 of the Texas Business & Commerce Code and his tortious interference with contractual relations claim against Grossman. The court also denied Loghry's request for leave to amend his pleadings as to his statutory fraud and tortious interference claims. In its order of April 27, 2005, this court acknowledged an inconsistent statement in its February 2, 2005 order, and clarified that Loghry's request for leave to amend, as to his tortious interference claim against Grossman was denied. After reconsidering Loghry's fraud and conspiracy claims against Grossman, this court, in its April 27, 2005 order, concluded that Loghry failed to state a claim for fraud and conspiracy against Grossman, and granted Loghry leave to amend his fraud and civil conspiracy claims against

Grossman. The sum of the two orders is that Loghry's claim of statutory fraud and claim of tortious interference by Grossman are dismissed, and he is not permitted to amend as to these claims. Loghry's was granted leave to amend his claim of fraud and civil conspiracy against Grossman by May 18, 2005.

In Defendant's Third Amended Answer, Counterclaim and Claims Against Additional Parties, filed May 18, 2005, Loghry again asserted claims of statutory fraud and tortious interference with existing contractual relations against Grossman. *See* Defendant's Third Amended Answer at 19, 22. In response to Plaintiffs' contention that he is ignoring the court's orders, Loghry maintains that he "did not remove or alter any other portions of his pleadings, including portions dealing with allegations of statutory fraud and tortious interference, because such action was not only unnecessary to effectuate the Court's Order, but clearly beyond the scope of the leave to amend granted by the Court." Defendant's Response at 12. Loghry points out that he has agreed to the dismissal of his statutory fraud claim. *Id.* at n.21. He further contends that since an amended pleading ordinarily supersedes the previous pleading and renders it of no legal effect, his failure to include the tortious interference claim in his third amended answer could arguably constitute abandonment or waiver of the claims for purposes of "alteration/amendment of the court's interlocutory order or for purposes of appeal." *Id.* at 12.

The court is baffled as to why Loghry would include the statutory fraud claim in his third amended answer, as he has agreed to dismiss this claim and maintains that he is not attempting to reassert this claim in light of the court's previous order. Ordinarily, an amended pleading supersedes an earlier pleading. In this instance, the inclusion of the statutory fraud claim in Loghry's third amended answer is of no effect, as this claim has been dismissed and the court will

not allow him to revive it. With respect to Loghry's tortious interference claim, Loghry acknowledges that it has been dismissed by the court, that he is not attempting to violate the court's previous order dismissing this claim, and that he includes the tortious interference claim to avoid waiver or abandonment in the event he seeks to appeal the court's order dismissing the claim. As Loghry correctly points out, to avoid waiver or abandonment of this claim for appeal purposes, he is required to include such claim in his amended pleading. *See King v. Dogen,* 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v.Redman Homes, Inc.,* 759 F.2d 504, 508 (5th Cir. 1985)). Accordingly, the court **denies** Plaintiff's request that Loghry be admonished for reasserting these claims.

## V.     Conclusion

For the reasons stated herein, the court **grants** Counter-Defendants[] and Third-Party Defendants' Motion to Dismiss For Failure to State a Claim Upon Which Relief Can Be Granted and Motion for Judgment on the Pleadings and Third-Party Defendants' Motion to Dismiss the Claims Against Them, which the court has converted to motions for summary judgment under Fed. R. Civ. P. 56, as to Loghry's claim of breach of contract against Lexxus and Natural Health Trends regarding the distributorship agreement; and also **grants** it as to Loghry's claim of breach of contract against Lexxus and Natural Health Trends regarding the stock agreement. These claims are **dismissed with prejudice**. The court **denies** Counter-Defendants[] and Third-Party Defendants' Motion to Dismiss For Failure to State a Claim Upon Which Relief Can Be Granted and Motion for Judgment on the Pleadings and Third-Party Defendants' Motion to Dismiss the Claims Against Them as to Loghry's fraudulent inducement and civil conspiracy claims. In light of this Memorandum Opinion and Order and the court's previous orders, the claims that remain for trial are: (1) Plaintiffs' request for declaratory judgment; (2) Plaintiffs' claim of breach of contract; (3)

Plaintiffs' claim of product disparagement/trade slander; (4) Loghry's counterclaim of fraudulent inducement; and (5) Loghry's counterclaim of civil conspiracy.

**It is so ordered** this 17th day of November, 2005.

Sam A. Lindsay
United States District Judge