IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEXXUS INTERNATIONAL, INC. and NATURAL HEALTH TRENDS CORP., | § § § | |
| Plaintiffs/Counter-Defendants, | § § | |
| v. | § § | |
| JOHN LOGHRY, | § § | Civil Action No. 3:04-CV-1039-L |
| Defendant/Counter-Plaintiff, | § § | |
| | § § | (consolidated with 3:06-CV-0561-L and with 3:06-CV-554-L) |
| v. | § § | |
| TERRY LACORE, MARK WOODBURN, and LISA GROSSMAN, Individually, | § § § | |
| Third-Party Defendants. | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are: Third-Party Defendant Lisa Grossmann's Motion for Summary Judgment, filed June 30, 2006 (Docket No. 103); Motion for Summary Judgment of Plaintiff/Counter-Defendants Lexxus International, Inc. and Natural Health Trends Corp., filed July 1, 2006 (Docket No. 105); Motion for Summary Judgment of Third-Party Defendant Mark Woodburn, filed July 3, 2006 (Docket No. 108); Terry LaCore's Motion for Summary Judgment, filed July 3, 2006 (Docket No. 110); Defendant/Counter-Plaintiff John Loghry's Motion for Partial Summary Judgment, filed July 3, 2006 (Docket No. 111); and Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and

Brief in Support, filed August 2, 2006.[1]  Having carefully considered the motions, responses, replies, appendices, evidence, record and applicable law, the court: **grants** Third-Party Defendant Lisa Grossmann's Motion for Summary Judgment (Docket No. 103); **grants** Motion for Summary Judgment of Plaintiff/Counter-Defendants Lexxus International, Inc. and Natural Health Trends Corp. (Docket No. 105); **grants** Motion for Summary Judgment of Third-Party Defendant Mark Woodburn (Docket No. 108); **grants** Terry LaCore's Motion for Summary Judgment, filed July 3, 2006 (Docket No. 110); and **grants in part and denies in part** Defendant/Counter-Plaintiff John Loghry's Motion for Partial Summary Judgment (Docket No. 111).  Further, having carefully considered the motion, response, reply, pleadings and applicable law, the court **denies** Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.      Factual and Procedural Background[2]

Because the court must consider the relevant facts in the context of cross-motions for summary judgment as well as a motion to dismiss, which are governed by different legal standards, the court will state the relevant facts in the context of considering each motion.  The court sets forth only the necessary background facts at this juncture.  Moreover, because an understanding of the

---

[1]Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Brief in Support was filed in *Philip M. Kelly, as Chapter 7 Bankruptcy Trustee in the Matter of John Loghry and Robyn Loghry v. Steve Francisco and StarSearch International, LLC*, 3:06-CV-554-L.  On the docket sheet for that case, this motion is Docket Entry Number 84.  The court recently consolidated Civil Action No. 3:06-CV-554-L with this action.  *See* Order of Consolidation (March 28, 2007).

[2]The parties and the court are familiar with the facts underlying this lawsuit, and the court has set forth in detail the facts and procedural history of this case in prior decisions, incorporated herein by reference.  *See* Order, Feb. 25, 2005; Memorandum Opinion and Order, Nov. 16, 2005.

procedural history of this case in essential to the court's various rulings, the court sets out the history in detail.

Plaintiff Lexxus International, Inc. ("Lexxus") is a subsidiary of Plaintiff Natural Health Trends Corp. ("Natural Health" or "NHTC") (collectively, "Plaintiffs").  Plaintiffs are in the business of selling cosmetic and "quality of life" products through a multi-level marketing distribution network.[3]  Terry LaCore ("LaCore") and Mark Woodburn ("Woodburn") are principals of Lexxus.  Lisa Grossman ("Grossman") is a Lexxus distributor.  In December 2000, Lexxus entered into an agreement with John Loghry ("Loghry") for Loghry to become  a front-line distributor for Lexxus.  There is no written distributorship agreement between the parties.  On or around June 10, 2002, Lexxus terminated Loghry's distributorship status.   This case arises from Loghry's termination.

A.     *Loghry Files for Bankruptcy in Federal Bankruptcy Court in Nebraska*

Loghry filed a personal bankruptcy petition on September 18, 2002, with the United States Bankruptcy Court for the District of Nebraska.  In those proceedings, Loghry did not disclose the existence of any potential claims against Plaintiffs, LaCore, Woodburn or Grossman.  Loghry was granted an order of discharge of his debts on December 31, 2002.

B.     *Plaintiffs Sue Loghry in the Northern District of Texas and Loghry Counterclaims*

Plaintiffs filed this action on May 13, 2004, against Loghry seeking a declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.*, that:

> (1) the plaintiffs, as well as their officers, directors, and employees, are not parties to any agreement with the defendant pursuant to which they are obligated to issue or provide any stock to the defendant; and
> (2) Lexxus was legally justified in terminating its distributorship

---

[3]Specifically, the "quality of life" product at issue is Viacream, a topical vaginal stimulant cream.

**Memorandum Opinion and Order - Page 3**

agreement with the defendant and, in any event, that Lexxus had the right to terminate that "at will" agreement at any time for any reason or no reason at all.

Pl. Comp. at 8.  Plaintiffs also seek damages for breach of contract and product disparagement.  *Id.* at 8-9.  On September 3, 2004, Loghry counterclaimed against Plaintiffs alleging breach of contract, fraudulent inducement, and statutory fraud.  *See* Def.'s Second Amended Answer and Counterclaim at 12-19.   Loghry also filed claims against LaCore, Woodburn and Grossman (sometimes collectively referred to as the "Lexxus Defendants"), alleging that they engaged in fraudulent inducement, statutory fraud, civil conspiracy and tortious interference with existing contractual relations.  *Id.*  He alleged that in February 2001, LaCore and Woodburn, on behalf of Lexxus and Natural Health, agreed and represented to him that there would never be another front-line distributor in the Lexxus network and that all distributors who entered the network would be placed in Loghry's "downline."  Loghry also alleged that Plaintiffs agreed to issue him one million shares of stock in Natural Health.  On November 1, 2004, Plaintiffs and the Lexxus Defendants filed a Motion for Judgment on the Pleadings and Third-Party Defendants' Motion to Dismiss the Claims Against Them (hereinafter "Motion for Judgment on the Pleadings").

       C.     *Loghry Sues Steve Francisco and StarSearch International in the District of Nebraska*

On July 2, 2004, Loghry field a lawsuit alleging breach of contract, tortious interference with contractual relations and civil conspiracy against Steve Francisco ("Francisco") and Susan Francisco, in connection with Loghry's termination from Lexxus (hereinafter, "the *Francisco* Lawsuit"). Specifically, Loghry alleged that he and others developed the concept of selling a line of health care products through a multi-level marketing distribution network, namely, Lexxus.  He alleges that Lexxus entered into an agreement with him promising that he would be a front-line

**Memorandum Opinion and Order - Page 4**

distributor and that he was to occupy "position 1015" of the distribution network, thereby earning commissions both from his own sales as well as from other Lexxus distributors' sales  "downline of position 1015."  Loghry alleged that in March 2001, LaCore asked him to contact Francisco to recruit him as a Lexxus distributor.  He alleges he contacted Francisco regarding the distributorship and "position 1014," which is one level above the "1015 position."  In March or April 2001, Lexxus activated the "position 1014" distributorship for StarSearch International LLC ("StarSearch"),[4] of which Francisco was the general manager. StarSearch mailed checks to Loghry based on agreement that Loghry would receive 25% of Lexxus revenues received by StarSeach.  When Lexxus terminated Loghry's distributorship on June 10, 2002, he stopped receiving money from StarSearch.

Loghry alleges that Lexxus's agreement with Francisco, whereby Francisco was to become an additional front-line distributor of Lexxus, violated his distributorship agreement.  Loghry alleges that Francisco and StarSearch breached an oral agreement related to sharing revenues with Loghry from the sale of healthcare products through Lexxus's network, that Francisco tortiously interfered with the contract, and that Francisco conspired with others, including Lexxus and StarSearch, to deprive him of promised revenues.[5]

D.      The Court's February 2, 2005 Order

By its order of February 2, 2005, the court granted in part and denied in part Plaintiffs' Motion for Judgment on the Pleadings, denying the motion to dismiss as to Loghry's claims of common law fraud and civil conspiracy, and granting the motion as to Loghry's claims of statutory

---

[4]StarSearch was originally named "1 Star Search," also known as "StarSearch International Trust."  The court will use the term "StarSearch" to refer to this entity.

[5]Loghry asserts these same claims against Lexxus. *See* Def. Third Amended Answer, Counterclaim and Claims Against Additional Parties ¶ 52.

**Memorandum Opinion and Order - Page 5**

fraud and tortious interference with contractual relations against Grossman, dismissing these claims without prejudice for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The court also denied Loghry's alternative request for leave to amend his pleadings as to his statutory fraud and tortious interference claims and denied as moot Loghry's alternative request for leave to amend his pleadings as to his common law fraud and civil conspiracy claims.[6] In a later order, the court granted Loghry leave to amend his complaint as to his claims of fraud and civil conspiracy against Grossman. Loghry filed Defendant's Third Amended Answer, Counterclaim and Claims Against Additional Parties on May 18, 2005.

E.      *Judicial Estoppel Arguments Raised by Plaintiffs and Lexxus Defendants*

On June 2, 2005, Plaintiffs and the Lexxus Defendants filed Counter-Defendants and Third-Party Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings. In their motions, Plaintiffs and the Lexxus Defendants contended that Loghry was judicially estopped from asserting his counterclaims because he failed to disclose any potential claims against them in his September 18, 2002 personal bankruptcy petition. They contended that such failure was not only an admission that no such claims existed, but also, as a matter of law, an automatic bar to future claims which arose before the bankruptcy and were not disclosed during the bankruptcy. Plaintiffs and the Lexxus Defendants also maintained they were entitled to judgment on the pleadings since Loghry contended that the actions which gave rise to the counterclaims were known to him and occurred before the bankruptcy. Loghry responded that his non-disclosure of his potential claims against Plaintiffs and the Lexxus Defendants was inadvertent and that the application of judicial estoppel would be

---

[6]In its order of April 27, 2005, the court acknowledged an inconsistent statement in its February 2, 2005 order. The court therefore amended its February 2, 2005 order to clarify that Loghry's request for leave to amend his tortious interference claim against Grossman was denied.

**Memorandum Opinion and Order - Page 6**

inequitable.  Before the court summarizes its ruling on these motions, in the interests of proceeding in chronological order, the court first turns to June 3, 2005, when Loghry moved to reopen his bankruptcy case.

> F.      *Loghry Moves to Reopen his Bankruptcy Case and to Reappoint Chapter 7 Trustee*

On June 3, 2005, Loghry moved to reopen his bankruptcy case and for reappointment of a Trustee of his Chapter 7 estate for the purposes of administering his prepetition claims.  In his motion, he stated:

> 2.      That prior to the filing of Debtor's bankruptcy petition, John Loghry was terminated as a distributor by Lexxus International, Inc.  Mr. Loghry is pursuing claims against Lexxus International, Inc., [NHTC], Terry LaCore, Mark Woodburn, and Lisa Grossman, in U.S. District Court, District of Texas, Dallas Division[.]
>
> * * *
>
> 4.      The Debtor was not aware of the causes of action until the discharge was granted in bankruptcy.
>
> 5.      The case should be reopened pursuant to 11 U.S.C. 350(b) to administer assets.

*See* Appendix to Brief in Support of Motion for Summary Judgment of Plaintiffs/Counter-Defendants at 9-10 ("Pl. MSJ App.").  On June 30, 2005, the United States Bankruptcy Court for the District of Nebraska entered an order reopening the bankruptcy of John and Robyn Loghry and reappointing Philip M. Kelly as Trustee for the bankruptcy estate.  In reopening the case, the bankruptcy court stated:

> A hearing was held on the motion to reopen and the objections on June 29, 2005.  The Chapter 7 trustee who had been appointed in the bankruptcy case appeared along with the other parties.  He orally joined in the motion to reopen so that he could evaluate the claims filed by the debtors in the two federal district court cases and, if he

deemed it appropriate, intervene as the real party in interest in either or both of those cases.[7]

The motion to reopen is granted.  The claims against Lexxus International, Inc., and Steve and Susan Francisco, whether of value or not, are assets of the Chapter 7 bankruptcy case which have not yet been administered or abandoned.  The issues with regard to judicial estoppel claims in both of the federal district court cases can still be appropriately resolved by the federal district courts with the real party in interest before the court.  The reopening of the bankruptcy case does not reinstate the automatic stay.  The discharge injunction has already been entered and cannot be revoked at this late date.

Pl. MSJ App. at 12.

> G.      *The Bankruptcy Trustee is Substituted as the Proper Party in Interest in The Francisco Lawsuit*

Following the reopening of the bankruptcy case, upon motion of Loghry, the district court substituted Philip M. Kelly, Chapter 7 Trustee for the Loghrys, as the party plaintiff in the *Francisco* Lawsuit, and directed Plaintiff to file a Second Amended Complaint which substitutes the bankruptcy trustee as a party.  On August 5, 2005, Kelly, as Chapter 7 Bankruptcy Trustee, filed Plaintiff's Second Amended Complaint in the case, now styled *Philip M. Kelly, as Chapter 7 Bankruptcy Trustee in the Matter of John Loghry and Robyn Loghry v. Steve Francisco and StarSearch International, LLC.*

> H.      *Bankruptcy Trustee Kelly Files Suit Against Lexxus, Natural Health, and the Lexxus Defendants in Federal Court in Nebraska*

On August 17, 2005, the Trustee filed a lawsuit, styled *Philip Kelly, bankruptcy trustee and as agent for Loghry v. Lexxus International, Inc., Natural Health Trends Corp., Terry LaCore, Lisa Grossman, Curtis Broome and Mark Woodburn*, Case No. 4:05CV3201, in the United States District

---

[7]The bankruptcy court is apparently referring to Loghry's counterclaims asserted in the case *sub judice*, as well as the *Francisco* Lawsuit, then pending in the District of Nebraska.

**Memorandum Opinion and Order - Page 8**

Court for the District of Nebraska (hereinafter "the Trustee's Lawsuit").  The Trustee incorporated *all* of the counterclaims and claims previously asserted by Loghry in this action (including those already dismissed by this court).

    I.        *The Court's November 16, 2005 Memorandum Opinion and Order*

On November 16, 2005, the court issued its decision on the judicial estoppel arguments raised by Plaintiffs and the Lexxus Defendants in Counter-Defendants and Third-Party Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings, filed June 2, 2005 (*see supra*).  In ruling on the motions, the court first converted Plaintiffs' and the Lexxus Defendants' motions into motions for summary judgment.  *See* Mem. Op. & Ord. at 2, n.2 ("As both parties include and rely on matters outside the pleadings regarding the motion to dismiss and motion for judgment on the pleadings, the court treats the motions as motions for summary judgment pursuant to Fed. R. Civ. P. 56.  *See* Fed. R. Civ. P. 12(b), 12(c).").  The court granted Plaintiffs' and the Lexxus Defendants' motions for summary judgment as to Loghry's breach of contract claims against them, determining that Loghry was judicially estopped from maintaining his breach of contract counterclaims in this action since he failed to disclose the potential breach of contract counterclaims in his September 18, 2002 personal bankruptcy petition, as required by the bankruptcy rules.[8]  With regard to Loghry's

---

[8]Judicial estoppel is a common law doctrine by which a party who  has assumed one position in his pleadings may be estopped from assuming an inconsistent position. *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir.1988). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689 (1895).  The doctrine's primary purpose is to protect the integrity of the judicial process, by preventing parties from "playing fast and loose with the courts to suit the exigencies of self interest."  *Brandon,* 858 F.2d at 268 (internal quotation marks, parentheses and citations omitted).  Three limitations apply to the doctrine: (1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must have not been inadvertent. *In re Superior Crewboats, Inc.* 374 F.3d 330, 335 (5th Cir. 2004).

fraudulent inducement and civil conspiracy claims, the court denied Plaintiffs' and the Lexxus

Defendants' motions for summary judgment, stating:

> Loghry has presented evidence that he lacked knowledge of these
> undisclosed claims, as he only became aware of such potential claims
> in 2003, after he was granted an order of discharge in December
> 2002.  At issue is whether Loghry had enough information prior to
> his bankruptcy proceeding to suggest that he may have possible
> causes of action for fraud and conspiracy against Plaintiffs and Third-
> Party Defendants that should have been disclosed.  As the court
> determines that there is a genuine issue of material fact regarding
> Loghry's knowledge of these potential claims and their non-
> disclosure, judicial estoppel cannot apply.

Mem. Op. & Ord. at 9-10 (Nov. 16, 2005).  The court further stated:

> In light of this Memorandum Opinion and Order and the court's
> previous orders, the claims that remain for trial are:  (1) Plaintiffs'
> request for declaratory judgment; (2) Plaintiffs' claim of breach of
> contract; (3) Plaintiffs' claim of product disparagement/trade slander;
> (4) Loghry's counterclaim of fraudulent inducement; and (5)
> Loghry's counterclaim of civil conspiracy.

*Id.* at 12-13.

       *J.*     *The Trustee's Lawsuit is Transferred from the District of Nebraska to the Northern*
               *District of Texas and Consolidated with this Case*

On or about January 30, 2006, a hearing was held in the Trustee's Lawsuit on the

Defendants' Motion to Transfer Venue to the Northern District of Texas, Dallas Division.  On

February 21, 2006, the district court in Nebraska issued a Memorandum Opinion and Order

transferring the Trustee's Lawsuit to the Northern District of Texas, Dallas Division.  On April 4,

2006, the Honorable Barbara G. Lynn transferred the Trustee's Lawsuit to this court for possible

consolidation.  On December 27, 2006, the court consolidated the Trustee's Lawsuit with this action.

K.     *The Francisco Lawsuit is Transferred from the District of Nebraska to the Northern District of Texas and Consolidated with this Case*

On February 21, 2006, the district court in Nebraska granted Defendants' motion to transfer venue to the United States District Court for the Northern District of Texas, and transferred the *Francisco* Lawsuit on March 29, 2006.  On May 17, 2006, the Honorable Jorge A. Solis transferred the case to this court for possible consolidation.  On March 28, 2007, the court consolidated the *Francisco* Lawsuit with this action.

L.     *Pending Motions*

1.     *Plaintiffs' and the Lexxus Defendants' Pending Motions*

Plaintiffs have filed a motion for summary judgment, contending, among other things, that Loghry lacks standing to pursue his fraudulent inducement counterclaim against them (as well as his other counterclaims), in light of the reopening of Loghry's Chapter 7 bankruptcy case to administer his prepetition claims and the Trustee's Lawsuit, filed after the reopening, which is a mirror image of the counterclaims and claims asserted by Loghry in this action.[9]   Each of the Lexxus Defendants has filed a motion for summary judgment.  LaCore and Woodburn move for summary judgment contending, among other things, that Loghry lacks standing to pursue his fraudulent inducement and civil conspiracy claims against them, and each incorporates by reference Plaintiffs' Motion for Summary Judgment.  Grossman has also moved for summary judgment contending that Loghry's civil conspiracy claim (the only remaining claim against her) should be dismissed, since Loghry has not asserted an underlying tort claim against her.  Grossman also incorporates by reference Plaintiffs' Motion for Summary Judgment.

---

[9]As correctly noted in Plaintiffs' Reply brief, though it was styled as a motion for summary judgment, Plaintiffs' motion "should more properly have been styled Motion for Partial Summary Judgment because Lexxus and NHTC also have a claim for declaratory relief, as well as two affirmative claims against Loghry: one for breach of contract and the other for trade disparagement."  *See* Pl. Reply at 1, n.1.

**Memorandum Opinion and Order - Page 11**

2.      *Loghry's Motion for Partial Summary Judgment*

On July 3, 2005, Loghry filed a motion for partial summary judgment contending that he is entitled to judgment in his favor and against Plaintiffs as to: (1) Plaintiffs' request for declaratory judgment that the distributorship agreement between Lexxus and Loghry was "at will" and could be terminated by Plaintiffs at any time for any reason or for no reason at all, and that Lexxus was legally justified in terminating the distributorship agreement with Loghry; (2) Lexxus's claim of product disparagement; and (3) Lexxus's claim for breach of contract.

3.      *Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)*

In the *Francisco* Lawsuit (now consolidated with this case), Defendants Francisco and Starsearch have moved to dismiss the Bankruptcy Trustee's claims against them for breach of contract, tortious interference with contractual relations and civil conspiracy.  Defendants contend that the breach of contract claim is barred by the Statute of Frauds, that the tortious interference claim fails because Francisco cannot legally interfere with his own company's agreement, and that the civil conspiracy claim fails because Francisco cannot legally conspire with himself as the sole owner and member of Starsearch.

The court will address the pending motions in the order in which they became ripe.  To reiterate, following the court's issuance of its November 17, 2005 Memorandum Opinion and Order, *see supra*, the following claims are it issue in the summary judgment analysis: fraudulent inducement (against Plaintiffs, Woodburn and LaCore) and civil conspiracy to commit fraud (against Woodburn, LaCore and Grossman).

**Memorandum Opinion and Order - Page 12**

## II.     Plaintiffs' and the Lexxus Defendants' Motions for Summary Judgment

### A.     Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *Ragas,* 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513

U.S. 871 (1994).  Likewise, hearsay evidence, unless it falls within a recognized exception, is not competent summary judgment evidence.  *See Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir.1995).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas,* 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson,* 477 U.S. at 248.  Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex,* 477 U.S. at 322-23.

### B.      Analysis

Plaintiffs have filed a motion for summary judgment, contending, among other things, that Loghry lacks standing to pursue his counterclaims against them because the counterclaims he asserts are prepetition claims which only the Bankruptcy Trustee has standing to bring.  As stated above, the Lexxus Defendants have each filed a motion for summary judgment incorporating Plaintiffs' standing argument.

In response, Loghry contends that, as a threshold matter, Plaintiffs and the Lexxus Defendants should not be allowed to move for summary judgment, as this would constitute an impermissible "second bite at the apple" in violation of Local Rule 56.2.  As to the merits of the

**Memorandum Opinion and Order - Page 14**

motion, he argues, among other things, that he has standing to bring the fraudulent inducement and civil conspiracy counterclaims because he did not know about them until after the discharge of his bankruptcy.  In support, he relies on the court's November 2005 Memorandum Opinion and Order where the court determined that Loghry was not judicially estopped from raising his fraudulent inducement and civil conspiracy counterclaims.  Alternatively, he argues that if the court determines he lacks standing, substitution of the trustee is the appropriate remedy, rather than dismissal of his claims.  The court will first consider whether Plaintiffs' and the Lexxus Defendants' motion for summary judgment should be allowed in light of the court's conversion of their previous motion into a motion for summary judgment, and then turn to whether Loghry has standing to bring his fraudulent inducement and conspiracy claims.[10]

### 1.    Local Rule 56.2 and Plaintiffs' and the Lexxus Defendants' Summary Judgment Motions

Local Rule 56.2 provides: "Unless otherwise directed by the presiding judge, or permitted by law, a party may file no more than one motion for summary judgment."  As set forth above, on November 16, 2005, the court issued a decision on Counter-Defendants and Third-Party Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings, filed June 2, 2005 (*see supra*).  In ruling on the motions, the court converted Plaintiffs' and the Lexxus Defendants' motions into motions for summary judgment.  *See* Mem. Op. & Ord. at 2, n.2.  The court stated: "As both parties

---

[10]Plaintiffs and the Lexxus Defendants are not moving for summary judgment on the issue of whether  the alleged misrepresentations that Loghry contends were made to him were, in fact, ever made; rather they are asking the court to determine, as a matter of law, that Loghry lacks standing.  As stated by Plaintiffs and the Lexxus Defendants in their Reply, "[T]he decision . . . not to move for summary judgment on the issue of whether the alleged misrepresentations were made only reflects an appreciation . . . that a fact issue can almost always be raised on the 'he said/she said' elements of a fraud claim.  Lexxus and NHTC have instead chosen to focus their summary judgment efforts on those elements of Loghry's claims where not even the remotest fact issues may be raised by Loghry."  Reply at 4, n.4.  With regard to the legal question of standing, there are no genuine issues of disputed fact for the court to consider.

include and rely on matters outside the pleadings regarding the motion to dismiss and motion for judgment on the pleadings, the court treats the motions as motions for summary judgment pursuant to Fed. R. Civ. P. 56.  *See* Fed. R. Civ. P. 12(b), 12(c).").  *See id.*

Although Loghry is technically correct regarding Local Rule 56.2, the court determines that, under the unique circumstances presented, Plaintiffs' and the Lexxus Defendants' motions for summary judgment should be allowed.  First, as pointed out by Plaintiffs and the Lexxus Defendants in their Reply brief, it was not until after they filed their June 2, 2005 motions that Loghry successfully moved to reopen his bankruptcy case to administer prepetition assets.  "It was the reopening of Loghry's bankruptcy and the appointment of the Trustee on June 30, 2005 that divested Loghry of any standing to further pursue the claims that he asserted in this action."  Reply at 2. Second, as set forth in Plaintiffs' and the Lexxus Defendants' Reply, "[I]t was not until August 17, 2005 that the Trustee filed [the Trustee's Lawsuit], wherein the Trustee asserted verbatim each and every one of the claims pleaded by Loghry in his Counterclaim in this case thereby further confirming that the Trustee believed that all of Loghry's claims belonged to the bankruptcy estate." *Id.* at 2, n.2.  Finally, Plaintiffs and the Lexxus Defendants state that they filed their June 2, 2005 motion in "good faith," and not in an attempt "to lay the groundwork to later file another dispositive motion in the event the first one did not succeed."  *Id.* at 2.  The court has been presented with no evidence to the contrary.

Under these circumstances, the court rejects Loghry's argument that Local Rule 56.2 should be applied as a bar to the pending motions for summary judgment.  The court determines that for the reasons set forth by Plaintiffs and the Lexxus Defendants in their Reply, and in the interests of justice, Plaintiffs' and the Lexxus Defendants' motions for summary judgment will be allowed.

2.      **Standing**

a.      **The Parties' Arguments**

Plaintiffs and the Lexxus Defendants argue that only the Bankruptcy Trustee has standing to pursue the causes of action for fraudulent inducement and civil conspiracy raised in Loghry's counterclaims because those causes of action are prepetition claims, and therefore property of the estate following the reopening of Loghry's bankruptcy case in June 2005. As such, the Bankruptcy Trustee has exclusive standing to assert these causes of action. In further support, they contend that in filing a mirror image lawsuit following the reopening of the bankruptcy case, the Trustee is asserting that he has standing to bring these claims. Plaintiffs and the Lexxus Defendants also contend that in reopening Loghry's bankruptcy case on Loghry's motion, the bankruptcy court decided that the claims Loghry is currently pursuing are assets of the Chapter 7 Bankruptcy Trustee.[11]      In response, Loghry argues that he has standing to bring the fraudulent inducement and civil conspiracy counterclaims because he did not know about them until well after the discharge of his bankruptcy. Essentially, he is making the same argument he made before the court in response to Plaintiffs' and the Lexxus Defendants' claims that he should be judicially estopped from bringing these counterclaims against them. Alternatively, Loghry argues that if the court determines he lacks standing, substitution of the trustee is the appropriate remedy, rather than dismissal of his claims.

_____

[11]Specifically, the bankruptcy court, in reopening Loghry's case, stated:

> The claims against Lexxus International, Inc., and Steve and Susan Francisco, whether of value or not, are assets of the Chapter 7 bankruptcy case which have not yet been administered or abandoned. The issues with regard to judicial estoppel claims in both of the federal district court cases can still be appropriately resolved by the federal district courts with the real party in interest before the court.

Pl. MSJ App. at 12.

**Memorandum Opinion and Order - Page 17**

### b.      Discussion

Upon the filing of bankruptcy, Title 11 U.S.C. § 541(a)(1) creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case."  As stated by the Fifth Circuit, "[t]his definition is very broad and includes causes of action belonging to the debtor at the commencement of the case."  *Matter of Swift*, 129 F.3d 792, 795 (5th Cir. 1997).  The trustee serves as the representative of the bankruptcy estate, and as such, the trustee is the real party in interest with exclusive standing to pursue prepetition claims on the estate's behalf.  *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) (and cases cited therein).

The court must therefore determine as a matter of law whether Loghry had a property interest in the causes of action for fraudulent inducement and civil conspiracy as of September 17, 2002, when he filed for bankruptcy.  To determine whether he had a property interest in the causes of action as of that date, the court must consider when the causes of action accrued.  *See id.*  Loghry argues that the causes of action accrued when he discovered them, in the summer of 2003:

> approximately six (6) months after the initial closing of his bankruptcy case, when he received a telephone call from Thomas Crowley informing him of the fact that Grossman, in coordination with Curtis Broome, the president of Lexxus at the time, had solicited him to prepare a statement falsely accusing Loghry of cross-recruiting in order to get Loghry terminated as a Lexxus distributor.

Loghry's Consolidated Response at 9.  In opposition, Plaintiffs and the Lexxus Defendants contend:

> Loghry's causes of action for fraudulent inducement and conspiracy accrued at the time the conduct occurred [prior to his termination], not when Loghry discovered or should have discovered such conduct, as Loghry mistakenly argues. [Thus], given that the claims occurred prepetition and are, therefore the property of the bankruptcy estate, Loghry lacks standing to pursue such claims.

Reply at 9.

**Memorandum Opinion and Order - Page 18**

Accrual "for purposes of ownership in the bankruptcy proceeding" is not the same as accrual for purposes of "determining the start of the running of the statute of limitations." *Matter of Swift*, 129 F.3d at 796.  ("These are two separate and distinct issues aimed at very different problems."). The Fifth Circuit further elucidated the difference with a concrete example:

> Under the [discovery] rule, the statute of limitations does not begin to run until the injured party "discovers" or with the exercise of reasonable care and diligence should have discovered that a particular injury has occurred.  The result is that the statute of limitations may begin to run on a date other than that on which the suit could first be maintained.  A classic example illustrates this.  Consider a case of medical malpractice in which the treating physician has left a dangerous metal instrument inside the body of his patient.  At the time the doctor finishes the surgery, the doctor has completed a tort. He has violated a legal duty owed the patient, and the patient was injured by that violation.  If the patient instituted suit at this moment, his suit would be viable.  Under the discovery rule, the statute of limitations is tolled until the patient either discovers or should have discovered that an injury has occurred. *The example shows that the dates of accrual and the start of the running of the statute of limitations may vary greatly.*  Unfortunately, many cases applying the principles of the discovery rule are written in terms of accrual.

*Id.*  (Emphasis added).

Applying the lesson of *Matter of Swift* to this case, the court determines that Loghry's argument, and the cases he cites in support, pertain to application of the discovery rule and when the statute of limitations begins to run, and not the accrual of his causes of action "for purposes of ownership in the bankruptcy proceeding."  That Loghry may not have discovered the alleged fraudulent inducement and civil conspiracy until a telephone call in the summer of 2003 is a distinct issue from whether those claims were property of the bankruptcy estate.  The summary judgment record shows that Lexxus terminated Loghry on June 10, 2002, and that he filed his bankruptcy petition on September 18, 2002.  The specific allegations contained in Loghry's counterclaims and

**Memorandum Opinion and Order - Page 19**

claims are that the alleged fraudulent misrepresentations and alleged conspiracy to terminate him took place before he was terminated in June 2002.   Accordingly, his counterclaims and claims of fraudulent inducement are prepetition claims and thus property of the estate under 11 U.S.C. § 541. *See Matter of Swift*, 129 F.3d at 796.   As already stated, only the Bankruptcy Trustee has standing to assert these claims.  *See Wieburg*, 272 F.3d at 306.

Further, the court rejects any suggestion by Loghry that the court has already determined the issue of his standing in its November 16, 2005 Memorandum Opinion and Order.  In that decision, the court did not (either explicitly or implicitly) find that Loghry's fraudulent inducement or civil conspiracy claims were post-petition claims, or that Loghry had not discovered facts giving rise to his claims until after he filed for bankruptcy.  In the context of that opinion, the court was concerned with the issue of whether Loghry was judicially estopped from asserting his counterclaims. Specifically, the court was considering the three limitations that apply to the doctrine of judicial estoppel, namely, that: (1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must have not been inadvertent.  *See In re Superior Crewboats, Inc.* 374 F.3d at 335.  In support of his argument that he was not judicially estopped, Loghry presented evidence that his failure to disclose the claims in his bankruptcy schedules may have been inadvertent.  The court ruled that there was a fact issue as to whether Loghry had discovered facts that would put him on notice that he had fraud and conspiracy claims, which would prevent application of the third prong of the test for applying judicial estoppel, namely, that the non-disclosure must have not been inadvertent. *See id.*

In sum, because the court concludes that Loghry lacks standing to assert his counterclaims and claims of fraudulent inducement and/or civil conspiracy against Plaintiffs and the Lexxus Defendants, Plantiffs' and the Lexxus Defendants' motions for summary judgment should be granted on this ground.[12]   In light of the court's determination that Loghry lacks standing, Lisa Grossman's objections to Loghry's summary judgment evidence are **overruled as moot**. *See* Third-Party Defendant Lisa Grossman's Reply and Objections at 3-4.

### 3.        Substitution of the Trustee as Real Party in Interest

Loghry argues, alternatively, that pursuant to Fed. R. Civ. P. 17(a), if the court determines he lacks standing, substitution of the trustee is the appropriate remedy, rather than dismissal of his claims.  Loghry Consolidated Response at 13.  Plaintiffs and the Lexxus Defendants argue that Loghry's argument is flawed, particularly as no party, despite ample time, has moved to substitute the Trustee as the real party in interest.

The last sentence of Rule 17(a) provides that,  "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest." Fed.R.Civ.P. 17(a). According to the Advisory Committee's Notes, this provision was added "simply in the interests of justice" and "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Fed.R.Civ.P. 17(a) Advisory Committee Notes, 1966 Amendment.   As stated by the Fifth Circuit: "In accordance with the Advisory Committee's note, most courts have interpreted the last sentence of Rule 17(a) as being applicable only when the plaintiff brought the action in [his] own

---

[12]Given the court's conclusion that Loghry lacks standing, the court need not consider the alternative arguments raised by Plaintiffs and the Lexxus Defendants in support of their respective motions for summary judgment.

name as the result of an understandable mistake, because the determination of the correct party to bring the action is difficult." *Weiburg*, 272 F.3d at 309.  In *Weiburg*, the court found that, in light of Rule 17(a)'s purpose of preventing forfeitures, the district judge had abused his discretion under Rule 17(a) in dismissing claims after finding that the plaintiff lacked standing to raise prepetition claims, because he failed to provide an explanation of "why less drastic alternatives of either allowing an opportunity for ratification by the Trustee, or joinder of the Trustee, were appropriate." *Weiburg*, 272 F.3d at 309.  On remand, in explaining why it arrived at the conclusion that dismissal (rather than substitution of the trustee) was appropriate, the district court considered the plaintiff's failure to disclose the claims at issue in her bankruptcy petition, the fact that she had a reasonable time after the standing issue was raised to obtain joinder, ratification, or substitution of the trustee, and the negligible impact on her creditors.  *See  Weiburg v. GTE Southwest*, *Inc.*, 2002 WL 31156431, at **2-5 (N.D. Tex. Sept. 26, 2002) (Buchmeyer, J.).  Judge Buchmeyer's decision was affirmed by the Fifth Circuit.  *See Weiburg v. GTE Southwest Inc.*, 2003 WL 21417074, at *2 (5th Cir. June 2, 2003) ("Now that we have the court's reasons, we conclude that it did not abuse its discretion by dismissing the suit.").

Under the *Weiburg* factors, the court concludes that dismissal without substitution is appropriate in this instance.  Even assuming *arguendo* that Loghry inadvertently failed to disclose his fraudulent inducement and conspiracy counterclaims in his bankruptcy petition, interested parties have had more than ample time to obtain joinder, ratification, or substitution of the Trustee as the real party in interest.  Specifically, as early as June 30, 2005, in reopening Loghry's bankruptcy case, the judge stated:

> A hearing was held on the motion to reopen and the objections on
> June 29, 2005.  The Chapter 7 trustee who had been appointed in the

> bankruptcy case appeared along with the other parties. *He orally joined in the motion to reopen so that he could evaluate the claims filed by the debtors in the two federal district court cases and, if he deemed it appropriate, intervene as the real party in interest in either or both of those cases.*

Pl. MSJ App. at 12 (emphasis added). The Trustee has never sought to intervene in the place of Loghry, although he did so in the *Francisco* Lawsuit.

Second, dismissal rather than substitution would have little, if any, impact on Loghry's creditors, in light of the Trustee's Lawsuit which is before the court, and in which the Trustee has incorporated *all* of the counterclaims and claims previously asserted by Loghry in this action (including those already dismissed by this court). Accordingly, the creditors will not be harmed if the court dismisses Loghry's fraudulent inducement and civil conspiracy counterclaims rather than substitute the Trustee as the real party in interest.

Finally, the court notes that the same attorney represents the Trustee in the *Francisco* Lawsuit and the Trustee in the Trustee's Lawsuit, as well as Loghry in this action. In making the argument for substitution of the Trustee as the real party in interest at this late juncture, Loghry presents this court with the untenable situation that the Trustee would be pursuing two lawsuits that are essentially identical, one as a plaintiff and one as a counterclaimant. This will not do. In short, having carefully considered the *Weiburg* factors (*see supra*), the court rejects Loghry's argument that the Trustee should be substituted as the real party in interest.

II.    **Loghry's Motion for Partial Summary Judgment**

A.    **Factual Background**

In setting forth the facts, the court applies the summary judgment standard already set forth above.  *See supra* at 13-14.  The court will only set forth the facts that are material to its determination of Loghry's motion for partial summary judgment.  Viewing the evidence in the light most favorable to the nonmoving party, the facts are as follows:

In December 2000, Lexxus entered into an agreement with Loghry for him to become a front-line distributor for Lexxus.  This was an oral at-will agreement that permitted either party to terminate the relationship at any time for any reason or no reason at all.  Shortly after Lexxus was formed, Loghry and other male distributors referred to Lexxus's signature product, ViaCream, as "p**** cream."  Pl. App. at 97.  The Reverend Kenneth Williams, who attended a Lexxus kick-off event in Las Vegas with several other church members he invited, saw Loghry and other men looking inebriated with "ladies of the night," and overheard them having "lascivious conversations" "in the nature of prostitution," and they were "talking about [ViaCream] being a – a cream for pleasure."  *Id.* at 140, 159-60.  As a direct result of what they saw and overheard, Reverend Williams and his guests left the convention and abstained from involvement with Lexxus for "quite a while." *Id.* at 159-60.

Lexxus terminated Loghry's distributorship after Lexxus was informed by two other distributors that Loghry had contacted them directly and attempted to cross-recruit those distributors into another network marketing company in violation of Lexxus's written company policies.  Lexxus has a policy which provides: "A Lexxus distributor who personally sells products other than Lexxus products or who sells services must not encourage another Lexxus distributor whom he or she does

not personally sponsor to sell such products and services." *Id.* at 118.  Lexxus also had a policy

against direct or indirect cross-recruiting.  *See id.* at 104 ("During the term of this agreement and

for 90 days thereafter, a Distributor shall not – directly or indirectly – solicit Distributors of Lexxus

International to other network marketing organizations.").  Lexxus's policies against cross-recruiting

were "zero tolerance" policies, as set forth in the following paragraph submitted as evidence by

Plaintiffs from its Policies and Procedures:

> Non-Solicitation: A Lexxus International Distributor shall not, on his
> own behalf or on behalf of any other person, partnership, association,
> corporation, or other entity, attempt to hire or solicit any employees,
> other Lexxus International Distributors, customers, developer, or
> supplier of the Company . . . to alter their employment or business
> relationship with the Company or its affiliates, or to create a business
> relationship with another Network Marketing or competitive
> company.  It is agreed that this provision shall survive the termination
> or expiration of this agreement.  This is a ZERO TOLERANCE rule.

*Id.* at 105.

After learning of Loghry's violation of company policy, Lexxus notified him in writing of

the violation and gave him an opportunity to respond to the charges within 10 business days.  In the

event that Loghry did not respond within that time frame, his distributorship would be terminated.

Loghry did not respond in writing, and his distributorship was terminated as of June 10, 2002.

**B.     Analysis**

Loghry has moved for summary judgment requesting that the court enter judgment in his

favor and against Plaintiffs as to Plaintiffs' request for a declaratory judgment that: (1) the

distributorship agreement between Lexxus and Loghry was "at will" and could be terminated by

Lexxus at any time for any reason or for no reason at all; and (2) Lexxus was legally justified in

terminating its distributorship agreement with Loghry. Loghry has also moved for summary

judgment on Plaintiffs' product disparagement and breach of contract claims and has submitted evidence in support.[13]  In support, Loghry contends that there in no genuine issue of material fact as to any of these claims.  Plaintiffs contend that they have submitted sufficient evidence in opposition to Loghry's motion for summary judgment to create a genuine issue of material fact as to each claim.  Having considered the motion, response, reply, evidence, record and applicable law, the court determines that Loghry's motion for summary judgment should be denied as to Plaintiffs' request for declaratory relief and granted as to Plaintiffs' claims for product disparagement and breach of contract.

### 1.        Plaintiffs' Request for Declaratory Relief

To reiterate, in their complaint, Plaintiffs requested a declaratory judgment that: (1) the distributorship agreement between Lexxus and Loghry was "at will" and could be terminated by Lexxus at any time for any reason or for no reason at all; and (2) Lexxus was legally justified in terminating its distributorship agreement with Loghry.

In support of his motion for summary judgment, Loghry has presented as evidence Lexxus's own Policies and Procedures which provide that Lexxus has the right to terminate a distributorship only "in the event of a material breach by the distributors," and not "at will."  Appendix to Defendant/Counter-Plaintiff John Loghry's Motion for Partial Summary Judgment at 32 ("Loghry SJ App.").  He also states in his Declaration that while he was a Lexxus distributor, he was not a distributor for any other marketing company and did not personally sell any products or services other than Lexxus products.  *Id.* at 52.  Loghry testified at his deposition that he introduced Lexxus's

---

[13]Loghry makes the argument that Plaintiffs never brought a breach of contract claim, but only sued him for breach of "the covenant of good faith and fair dealing."  The court rejects Loghry's narrow construal of Plaintiffs' allegations.

**Memorandum Opinion and Order - Page 26**

Thomas Crowley and Jason Caramanis to Randy Thompson, an MVP Network distributor, at Thompson's request, and that Thompson made the sales pitch for MVP.  Loghry has also submitted the Affidavit of Thomas Crowley wherein Crowley states that Loghry did not attempt to cross-recruit him into MVP Network, and that he prepared a statement accusing Loghry of cross-recruiting at the request of Grossman and Curtis Broome ("Broome"), then President of Lexxus.  *Id.* at 64-65.

In response, Plaintiffs have submitted summary judgement evidence that Loghry, up until the time of filing his motion for partial summary judgment, had taken the position (including in filings with the court) that there was no written distributorship agreement.  *See, e.g.,* Appendix to Plaintiffs/Counter-Defendants' Response to John Loghry's Motion for Partial Summary Judgment at 12-13, 20 ("Pl. App.").  Plaintiffs have also submitted evidence that in his Answers to Interrogatories, when asked to define the nature and terms of the alleged oral agreement that Loghry claimed existed between him and Lexxus, Loghry failed to identify any provisions or terms that addressed the duration of the agreement, or the rights (or lack thereof), of Lexxus to terminate the agreement, let alone Lexxus's Policies and Procedures.  *Id.* at 51-52.  In light of this evidence, Plaintiffs contend that they have raised a genuine issue of material fact that any distributorship agreement which existed was silent as to duration, and therefore terminable at will under Texas law. *See* Pl. Resp. at 5 (and cases cited therein).

Alternatively, Plaintiffs contend that to the extent Loghry is now claiming his distributorship agreement was governed by its Policies and Procedures, his termination was still justified and Plaintiffs are still entitled to a declaration that termination was proper.  In support, Plaintiffs have submitted evidence that they learned that Loghry had attempted to "cross-recruit" Lexxus's Caramanis and Crowley to work for another network marketing company, MVP, in violation of

Lexxus's Policies and Procedures.  *See* Pl. App. at 25-26, 61, 134.  Plaintiffs have also presented

evidence that following its receipt of that information, Loghry was sent a letter from Juli Lascalere,

Lexxus's Compliance Director, setting forth the allegations of cross-recruiting and directing him to

respond in writing within a ten-day period, or he would be terminated.  *Id.* at 67.  Plaintiffs present

evidence that Loghry received the letter within the ten-day period, but did not respond in writing.

*Id.* at 72-73.  Finally, Plaintiffs have submitted evidence and made arguments that, even were the

court to accept on its face Loghry's testimony at deposition and in his Declaration that he never

worked for MVP, but only introduced Crowley and Caramanis to an MVP distributor, Plaintiffs

would still be justified in terminating Loghry under its  "zero tolerance" policy with regard to direct

and indirect cross-marketing.  *Id.* at 104-05.

Viewing this evidence in the light most favorable to the nonmoving party, as to Loghry's

motion for summary judgment motion on Plaintiffs' request for declaratory relief, the court

determines that Plaintiffs have submitted evidence sufficient to create a genuine issue of material

fact that (1) the distributorship agreement was "at will" and could be terminated by Lexxus at any

time for any reason or for no reason at all; and (2) Lexxus was legally justified in terminating its

distributorship agreement with Loghry.   Accordingly, Loghry's motion for summary judgment on

Plaintiffs' request for declaratory relief should be denied.

### 2.    Product Disparagement

Loghry has moved for summary judgment on Plaintiffs' product disparagement claim.  In

support, he contends that Plaintiffs have failed to present any evidence demonstrating the existence

of a material fact as to the elements of a product disparagement claim, namely: (1) that Loghry

published disparaging and false words, (2) with malice, (3) which caused special damages, and (4)

lack of privilege.  *See Hurlbut v. Gulf Atlantic Life Ins.*, 749 S.W.2d 762, 766 (Tex. 1987).  In response, Plaintiffs have submitted evidence to the court that Loghry and other male distributors referred to Lexxus's signature product, ViaCream, as "p**** cream," (Pl. App. at 97), and that Reverend Kenneth Williams, who attended a Lexxus kick-off event in Las Vegas with several other church members he invited, saw Loghry and other men looking inebriated with "ladies of the night," and overheard them having "lascivious conversations" "in the nature of prostitution" and they were "talking about [ViaCream] being a – a cream for pleasure." *Id.* at 140, 159-60.  As a direct result of what they saw and overheard, Reverend Williams and his guests left the convention and abstained from involvement with Lexxus for quite some time.  *Id.*

As correctly argued by Loghry in his reply brief, even assuming the crude reference to ViaCream made by Loghry and other male distributors was disparaging, any such references do not support a product disparagement claim as a matter of law because there is no evidence that such references were "false, made with malice, or caused special damages to Plaintiffs."  Reply at 8. Moreover, it is undisputed that ViaCream is a topical vaginal stimulant cream.  Any reference to ViaCream as "p**** cream," although crude and offensive, would not be a false statement in light of this product's use, that would support a product disparagement claim under Texas law.  Similarly, Reverend Williams's deposition testimony does not, as a matter of law, raise a genuine issue of material fact as to product disparagement.  Once again, "a cream for pleasure" is not a false statement, and there is no evidence that such references were false or made with malice.

In short, viewing this evidence in the light most favorable to the nonmoving party, the court determines that Plaintiffs have failed to submit evidence sufficient to create a genuine issue of material fact as to the key elements of their product disparagement claim.  Accordingly, Loghry's

motion for summary judgment on Plaintiffs' claim for product disparagement should be granted.

### 3.      Breach of Contract

Loghry has also moved for summary judgment on Plaintiffs' breach of contract claim. Plaintiffs alleged that Loghry breached the distributorship agreement when he: (1) engaged in cross-recruiting in violation of its Policies and Procedures and (2) disparaged the company's products, also in violation of its Policies and Procedures.  In support of his motion for summary judgment on the breach of contract claims, Loghry contends, among other things, that Plaintiffs have not presented any evidence of damages caused by his purported breach, such as that they lost any distributors or potential distributors as a result of his alleged cross-recruiting of other distributors.  In response, Plaintiffs contend that "the Policies and Procedures of Lexxus, which Loghry now apparently embraces as being the terms governing his distributorship agreement with Lexxus, do not require that in order to establish a breach of the distributorship agreement (i.e. the contract) that specific damages be established by the Company."  Resp. at 12.

The elements in a breach of contract claim include: (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach.  *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex.App.-Houston [14th Dist.] 2000, no pet.).  Regardless of the exact language in the Policies and Procedures, damages remain an essential element of a cause of action for breach of contract under Texas law.  Even viewing all evidence in the light most favorable to Plaintiffs, the court determines that Plaintiffs have failed to create a genuine issue of material fact that they suffered any damages

as a result of Loghry's alleged breach of the distributorship agreement.[14]   Accordingly, Loghry's

motion for summary judgment on Plaintiffs' claim for breach of contract should be granted.

**III.    Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

In the *Francisco* Lawsuit (now consolidated with this case), Defendants Francisco and

Starsearch have moved to dismiss the Bankruptcy Trustee's claims against them for breach of

contract, tortious interference with contractual relations and civil conspiracy.  Defendants contend

that the Trustee's breach of contract claim is barred by the Statute of Frauds, that the tortious

interference claim fails because Francisco cannot legally interfere with his own company's

agreement, and that the civil conspiracy claim fails because Francisco cannot legally conspire with

himself as the sole owner and member of Starsearch.  Having carefully considered the motion,

response, reply, pleadings and applicable law, the court determines that Franciso's motion to dismiss

should be denied as to the Trustee's claims for breach of contract, tortious interference with

contractual relations, and civil conspiracy.

**A.    Legal Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is viewed with

disfavor and is rarely granted."  *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which

relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46

---

[14]Plaintiffs' references to evidence of damages stemming from Plaintiffs' product disparagement claim, including deposition testimony by Reverend Williams that after he overheard disparaging remarks about ViaCream being made by Loghry and others in Las Vegas he decided not to become an active Lexxus distributor, are unavailing.  The court has already determined that Loghry is entitled to judgment as a matter of law on Plaintiffs' product disparagement claim. *See supra.*

**Memorandum Opinion and Order - Page 31**

(1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247. A court, however, is not to strain to find inferences favorable to the plaintiff and is not to "accept conclusory allegations, unwarranted deductions or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Lake's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

B.     The Trustee's Allegations in the *Francisco* Lawsuit

The Trustee's Second Amended Complaint, filed August 5, 2005, is the live pleading.  The Trustee alleges that Loghry and others developed the concept of selling a line of health care products through a multi-level marketing distribution network under the name of Lexxus, and developed a business plan that was the first of its kind to offer a binary multi-level marketing sales structure to effectively market and promote this particular line of health care products.  In January 2001, Lexxus began its initial market introduction.  Loghry was charged with managing Lexxus's sales effort. After Lexxus was formed, it entered into an agreement with Loghry, promising him that he would be a front-line distributor and that he was to occupy "position 1015" of the distribution network, thereby earning commissions both from his own sales as well as from other Lexxus distributors' sales "downline of position 1015."  The parties also agreed that Loghry would receive 14 additional positions in the "upline of position 1015" in the Lexxus distribution network (positions 1001-1014), which Loghry could activate or sell for his own personal benefit.

Lexxus was subsequently sold to NHTC, which was determined to place Francisco (a front-line distributor for Kaire International at the time), into a front-line distributorship position with Lexxus.  The Trustee alleges that in March 2001, LaCore asked Loghry to contact Francisco to work out an agreement whereby Francisco would receive "position 1014," one of the upline positions previously promised Loghry.  Loghry proceeded to negotiate with Francisco regarding the terms of an agreement to give Francisco position 1014 in exchange for a split between Loghry and Francisco of the gross revenue generated by position 1014.  In April 2001, Francisco began operating position

1014 through an entity known as Starsearch.[15]  Since October 2002, Francisco has been the member/manager of Starsearch.

Ultimately, Loghry and Francisco entered into an agreement via telephone calls with each other and LaCore, that Francisco would bring his Kaire International distributors to fill the right leg of position 1014 and that Loghry's downline distributors would fill the left leg of position 1014. The parties further agreed that in exchange for surrendering 75% of the gross revenue earned by position 1014, Loghry would retain 25% of the revenue, including commissions earned by position 1014 through the sales of the downline distributors in both the left and the right leg of position 1014. From May 2001 until June 14, 2002, Starsearch mailed checks to Loghry in keeping with the agreement.  On June 14, 2002, at the behest of Francisco, Starsearch ceased remitting to Loghry his share of the gross revenue.

The Trustee alleges, on information and belief, that as early as January 2002, Lexxus, Francisco, Susan Francisco and Starsearch, acting in concert with each other, conspired and implemented a plan which has resulted in misappropriating Loghry's earnings from position 1014 and, in effect, cutting "Loghry out of the equation," thereby maximizing their income at the expense and to the detriment of Loghry.  *See* Sec. Am. Compl. ¶ 19.[16]  The trustee alleges that the conspiracy and other acts of Francisco and Starsearch injured and interfered with Loghry's earnings and are the proximate cause of Loghry's substantial financial damages.  Finally, the Trustee alleges that at "all

---

[15]The court has already stated that it uses the term Starsearch collectively to comprise Starsearch International, LLC, 1 Star Search, and Starsearch International Trust.

[16]Loghry asserts these same allegations relating to Lexxus's agreement with Francisco and others to cut "Loghry out of the equation," as a counterclaims against Lexxus.  *See* Def. Third Amended Answer, Counterclaim and Claims Against Additional Parties ¶ 52.

**Memorandum Opinion and Order - Page 34**

relevant times, Francisco was acting on his own behalf and in the course and scope of his agency with" Starsearch. *Id.* ¶ 21.

### C.    Analysis

#### 1.    Breach of Contract

Francisco and Starsearch have moved to dismiss the Trustee's claim for breach of contract contending that it violated the Statute of Frauds.  Pursuant to § 26.01 of the Tex. Bus. & Comm. Code, "an agreement which is not to be performed within one year from the date of making the agreement" is not enforceable unless it is in writing.  Tex. Bus. & Comm. Code  § 26.01(b)(6). "[W]here the time for performance is indefinite in that the agreement merely provides for the performance of a particular act or acts which can conceivably be performed within one year, the Statute of Frauds is inapplicable, however improbable performance within one year might be." *Hondo Oil and Gas Co. v. Texas Crude Operator*, 970 F.2d 1433, 1438 (5th Cir. 1992).[17]  Defendants argue that it is clear from the complaint that Loghry believed the alleged revenue sharing agreement between him and Francisco "would last forever."  Def. Mot. at 3.  Further, according to Defendants, the Trustee does not even allege that the agreement was to be completed within one year.  *Id.* Defendants further argue that "in light of the circumstances surrounding the agreement as alleged by Plaintiff, it is reasonable to infer that the parties did not expect the agreement to be performed within one (1) year."  *Id.*   In response, the Trustee argues that because the agreement was capable of being performed in less than one year, the Statute of Frauds does not apply.  *See* Resp. at 3.

---

[17]Although the Trustee argues in his Response that Nebraska law instead of Texas law should be applied in ruling on the motion to dismiss, after considering the cases cited by both parties under Texas and Nebraska law, the court determines that, with regard to the Statute of Frauds, tortious interference and civil conspiracy, the law is substantially similar, thus pretermitting the need to undertake a choice of law analysis.

The court rejects Defendants' contention that the breach of contract claim should be dismissed as barred by the Statute of Frauds.  First, as stated by another court in this federal district: "Although Rule 12(b)(6) dismissal can be based upon an affirmative defense, the defense must appear on the face of the pleadings. Therefore, where, as here, the statute of frauds is urged as a defense, Rule 12(b)(6) dismissal should not be granted unless the defense is established by the face of the complaint." *Hannover Life Reassurance Co. of America v. Baker, Lowe, Fox Ins. Mktg., Inc.*, 2001 WL 1586874, at *7 n. 10 (N.D. Tex. Dec. 10, 2001) (Fitzwater, J.) (citing *Kansa Reinsurance Co. v. Congressional Mtg. Corp.*, 20 F.3d 1362, 1366 (5th Cir.1994)).  Defendants' argument is based on an inference from the circumstances surrounding the agreement.  Accordingly, Rule 12(b)(6) dismissal is inappropriate.  Second, the court agrees with the trustee that because the agreement is capable of being performed within a year, the Statute of Frauds does not apply.  *See Hondo Oil and Gas Co.*, 970 F.2d at 1438.  Accordingly, Defendants' motion to dismiss the Trustee's breach of contract claim should be denied.

### 2.  Tortious Interference Claim

Defendants contend that the Trustee's claim that Francisco tortiously interfered with Loghry's alleged agreement with Starsearch to split revenues must be dismissed.  In his complaint, the trustee alleged that Loghry had a valid business relationship with Starsearch, that Starsearch would receive "position 1014" in the Lexxus distribution network, which was a position previously promised Loghry, that Starsearch would retain 75% of the gross commission revenue earned by position 1014, and that Loghry, in exchange for relinquishing his interest in that position would receive 25% of the gross commission earned by that position.  The Trustee alleged that Francisco knew of the business relationship between Loghry and Starsearch and that Francisco entered into

the Starsearch agreement with Loghry.  With regard to intentional interference, the trustee alleged that Francisco, with the cooperation of Lexxus, moved distributors from the right leg of position 1014 to a leg under position 1012, a position owned by Francisco and/or Starsearch.  The allegations are that at Francisco's behest, Starsearch ceased remitting to Loghry his share of the gross commission revenue earned by position 1014 on or about June 14, 2002.  The Trustee alleges damages in the form of lost revenues to which he was entitled and would have received absent the alleged tortious interference.

The elements of tortious interference with a contract are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss.  *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000).  In support of their motion to dismiss the tortious interference claim, Defendants argue that Texas law does not recognize a claim of tortious interference against an agent who allegedly interfered with the contracts of his own company, because the agent is acting for and as the company.  *See* Def. Mot. at 4-5 (and cases cited therein). Defendants also contend that Plaintiffs have failed to allege any intentional interference by Francisco, as required by Texas law.  Defendants argues that the "Complaint is wholly devoid of any allegations that Francisco was acting contrary to Starsearch's interest and sought to intentionally interfere with the companies alleged contract to split revenues with Loghry."  *Id.* at 5.  In sum, Defendants argue that "Francisco was not a stranger to the contract and cannot be said to have intentionally interfered with the contract."  *Id.*  In response, the Trustee asserts that he pleaded facts that Francisco was acting for his individual advantage when he induced Starsearch to breach its

agreement with Loghry, and, with Loghry out of the way, received additional revenue from position 1014 that he could use, and did use, for his own personal benefit.

The court determines that the trustee has sufficiently pled his claim of tortious interference. As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts. *See Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). In *Holloway* the court held that:

> The second element of [a cause of action for tortious interference] is of particular importance when the defendant serves the dual roles of the corporate agent and the third party who allegedly induces the corporation's breach. To establish a prima facie case under such circumstances, the alleged act of interference must be performed in furtherance of the defendant's personal interests so as to preserve the logically necessary rule that a party cannot tortiously interfere with its own contract. We hold that to meet this burden in a case of this nature, the plaintiff must show that the defendant acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests.

*Id.* at 796. As set forth above, the Trustee has pled that Francisco, Starsearch's agent, acted in furtherance of his own personal interest.[18] The court also determines that he has sufficiently alleged the remaining elements of a claim for tortious interference. Accordingly, Defendants' motion to dismiss the Trustee's claim for tortious interference with contractual relations should be denied.

### 3. Civil Conspiracy Claim

Defendants have moved to dismiss the Trustee's civil conspiracy claims, contending that, as a "derivative tort," it must be predicated on an intentional tort. Defendants argue that from the complaint, they cannot ascertain upon which intentional tort the conspiracy claim is premised.

---

[18]While Defendants are correct that the Trustee had also alleged that Francisco was acting within the course and scope of his agency with Starsearch (*see* Pl. Am. Compl. ¶ 21), it is permissible to plead in the alternative. At the summary judgment stage, if the evidence shows that Francisco was acting in the scope and course of his agency, the outcome would be different.

**Memorandum Opinion and Order - Page 38**

Alternatively, Defendants argue that even if the conspiracy claim is premised on tortious interference, that claim should have been dismissed, and the conspiracy claim cannot stand alone and should also be dismissed.  Def. Mot. at 6-7.

In Texas, a:

> [c]ivil conspiracy, [which is ] generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, might be called a derivative tort.  That is, a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.

*Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (internal citation omitted).  The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.  *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Southeast Tex., Inc.*, 975 S.W.2d 546, 553 (Tex. 1998).  As the court has determined that the trustee has sufficiently pled his claim for tortious interference, there is a viable underlying cause of action for his civil conspiracy claim. Further, the court has considered the allegations of civil conspiracy in the Second Amended Complaint.  As the court must accept these factual allegations as true and draw all reasonable inferences in the Trustee's favor,  the court determines that the Trustee has stated a claim for civil conspiracy and alleged such claim with particularity.  Accordingly, Defendants' motion to dismiss the Trustee's claim of civil conspiracy should be denied.

### 4.  Leave to Amend

The Trustee requests leave to amend his pleadings to reflect recent disclosures he learned after filing the Second Amended Complaint relating to, among other things, the extent of Francisco's involvement in the alleged scheme to defraud Loghry. *See* Pl. Resp. at 2 (setting forth in detail the

allegations of fact he seeks leave to add).  No scheduling order was issued in the *Francisco* Lawsuit. While it is true that the *Francisco* Lawsuit has now been consolidated with Civil Action No. 3:04-CV-1039-L, and a motion to amend would be untimely under the scheduling order in that action, the court determines it would be unfair to hold the Trustee to the deadlines in that case, given that the consolidation occurred well after he sought leave to amend.  Under Rule 15(a) of the Fed. R. Civ. P., leave to amend shall be freely given when justice so requires.  In the absence of a substantial reason, such as bad faith, undue delay, or dilatory motive on the part of movant, or undue prejudice to the opposing party, a court should grant leave to file an amended pleading.  Other than arguing that amendment of the complaint would be futile, Defendants have filed no objections to allowing amendment of pleadings. Accordingly, the court **grants** the Trustee's request for leave to amend to add additional facts.  No additional causes of actions may be added.  Any amended pleading shall be filed **no later than April 16, 2007.**

## IV.    Conclusion

For the reasons stated herein, the court **grants** Third-Party Defendant Lisa Grossmann's Motion for Summary Judgment (Docket No. 103); **grants** Motion for Summary Judgment of Plaintiff/Counter-Defendants Lexxus International, Inc. and Natural Health Trends Corp. (Docket No. 105); **grants** Motion for Summary Judgment of Third-Party Defendant Mark Woodburn (Docket No. 108); **grants** Terry LaCore's Motion for Summary Judgment, filed July 3, 2006 (Docket No. 110); **grants in part and denies in part** Defendant/Counter-Plaintiff John Loghry's Motion for Partial Summary Judgment (Docket No. 111); and **denies** Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Claims remaining for trial are: (a) Lexxus's and NHTC's request for declaratory judgment that (1) the plaintiffs, as well as their officers, directors, and employees, are not parties to any agreement with the defendant pursuant to which they are obligated to issue or provide any stock to the defendant; and (2) Lexxus was legally justified in terminating its distributorship agreement with the defendant and, in any event, that Lexxus had the right to terminate that "at will" agreement at any time for any reason or no reason at all; (b) the Bankruptcy Trustee's claims for breach of contract against Lexxus and NHTC, for fraudulent inducement against Lexxus, NHTC, Woodburn and LaCore, for civil conspiracy against LaCore, Woodburn, Broome and Grossman, and for tortious interference with contractual relations against Grossman and Broome; and (c) the Bankruptcy Trustee's claims for breach of contract, tortious interference with contractual relations, and civil conspiracy against Francisco and StarSearch.  No party who has previously filed a summary judgment motion, or one that was converted into a summary judgment motion, may file additional dispositive motions without leave of court.

**It is so ordered** this 30th day of March, 2007.

Sam A. Lindsay
United States District Judge